# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 25, 2022

Peter J. Walsh, Jr., Esquire
Kevin R. Shannon, Esquire
Christopher N. Kelly, Esquire
Mathew A. Golden, Esquire
Callan R. Jackson, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Edward B. Micheletti, Esquire
Lauren N. Rosenello, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
920 N. King Street, 7th Floor
P.O. Box 636
Wilmington, DE 19899-0636

Brad D. Sorrels, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

> Re: *Twitter, Inc. v. Elon R. Musk et al.*,
> C.A. No. 2022-0613-KSJM

Dear Counsel:

This letter resolves issues raised in the August 15, 2022 letter from Defendants Elon R. Musk, X Holdings I, Inc., and X Holdings II, Inc. ("Defendants"), which this decision refers to as Defendants' "Second Discovery Motion." The motion seeks to compel Twitter, Inc. ("Plaintiff") to produce various documents, including information to verify Plaintiff's SEC disclosures regarding its estimates that less than 5% of mDAU are false or spam accounts (the "5% Disclosure").[1]

---

[1] C.A. No. 2022-0613-KSJM, Docket ("Dkt.") 163 ("Defs.' Second Disc. Mot."); *see also* Dkt. 169 ("Pl.'s Response to Defs.' Second Disc. Mot."); Dkt. 201 ("Defs.' Reply to Defs.' Second Disc. Mot."); Dkt. 231 ("Pl.'s Sur-Reply to Defs.' Second Disc. Mot.").

To deliver a prompt ruling, I will forego recapping each of the arguments raised by Defendants; I assume that readers of this letter are familiar with the parties' dispute. My overall impression is that Plaintiff has agreed to produce a tremendous amount of information to Defendants, and that the information Plaintiff has agreed to produce is sufficiently broad to satisfy most of Plaintiff's obligations. This letter orders the production of three additional categories of information.

First, as the primary target of their Second Discovery Motion, Defendants seek large troves of Plaintiff's data.[2] In their Second Discovery Motion, Defendants argued that this data was necessary to test the 5% Disclosure.[3] In their reply in further support of their Second Discovery Motion, Defendants argued that such documents were also relevant to their counterclaim for fraud—i.e., the theory that Plaintiff misleadingly touted mDAU without disclosing companion engagement data to present a complete picture.[4]

Defendants' data requests are absurdly broad. Read literally, Defendants' documents request would require Plaintiff to produce trillions upon trillions of data points reflecting all of the data Twitter might possibly store for each of the approximately 200 million accounts included in its mDAU count every day for nearly three years.[5] Plaintiff has difficulty quantifying the burden of responding to that request because no one in their

---

[2] *See* Defs.' Second Disc. Mot. Ex. 6 ("RFPs") 2, 3, 4, 18, 19.

[3] Defs.' Second Disc. Mot. at 19–21.

[4] Defs.' Reply to Defs.' Second Disc. Mot. at 7–8.

[5] *See* Pl.'s Response to Defs.' Second Disc. Mot. Ex. 9 at 1–4; Defs.' Second Disc. Mot. Ex. 3 at 1–3.

right mind has ever tried to undertake such an effort. It suffices to say, Plaintiff has demonstrated that such a request is overly burdensome.[6]

That said, some additional data from Plaintiff seems warranted. Plaintiff is ordered to produce a subset of what Defendants have requested: the 9,000 accounts reviewed in connection with Plaintiff's Q4 2021 audit, which the parties refer to as the "historical snapshot." I recognize that producing the historical snapshot is no small feat. Plaintiff represented that, with considerable effort, these documents could be produced in under two weeks, and Plaintiff shall strive to meet that timeline. In addition, Plaintiff must produce documents sufficient to show how those 9,000 accounts were selected for review.

The historical-snapshot data that I have ordered produced is highly sensitive. To their credit, Defendants have agreed to treat this data as highly confidential. The parties should confer on a list of Defendants' attorneys and data scientists who will be permitted to access this data.

Second, as to Defendants' mDAU fraud theory, Plaintiff has already agreed to produce ten broad categories of documents addressing mDAU, including documents reflecting Plaintiff's reliance on mDAU relative to other metrics.[7] Plaintiff is ordered produce a small additional set of data from its review database—documents reflecting discussion of any other key metric identified by Defendants, regardless of whether those

---

[6] *See* Dkt. 169 (Edgett Aff.) ¶ 5 (averring that a less extensive collection effort would be extraordinarily burdensome).

[7] *See* Pl.'s Response to Defs.' Second Disc. Mot. at 10; *see generally id.* Ex. 6.

documents expressly address mDAU.  Although Plaintiff may not withhold documents in its existing review database concerning these other key metrics, Plaintiff need not engage in further collection to satisfy this obligation.

Third and finally, Plaintiff is ordered to produce documents responsive to Defendants' RFP 49 at the board and management level from January 1, 2021 to the present.

Defendants' other requests in their Second Discovery Motion are denied.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc:     All counsel of record (by *File & ServeXpress*)